Kenneth I. Schacter
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, New York  10022
Tel: (212) 705-7000
Fax: (212) 752-5378
kenneth.schacter@bingham.com

Jordan D. Hershman
Jason D. Frank
**BINGHAM McCUTCHEN LLP**
One Federal Street
Boston, MA  02110-1726
Tel: (617) 951-8000
Fax: (617) 951-8736

*Attorneys for Nominal Defendant Freddie Mac*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

R.S. BASSMAN, Derivatively on Behalf of FREDDIE
MAC a/k/a Federal Home Loan Mortgage Corporation
and its shareholders,

        Plaintiff,

  v.

RICHARD F. SYRON, PATRICIA L. COOK,
ANTHONY S. PISZEL, EUGENE M. McQUADE,
RICHARD KARL GOELTZ, STEPHEN A. ROSS,
SHAUN F. O'MALLEY, ROBERT R. GLAUBER,
BARBARA T. ALEXANDER, WILLIAM M. LEWIS,
JR., JEFFREY M. PEEK, GEOFFREY T. BOISI,
RONALD F. POE, WASHINGTON MUTUAL, INC.,
PRICEWATERHOUSECOOPERS, LLP, KERRY K.
KILLINGER, ANTHONY R. MERLO, JR., FIRST
AMERICAN CORPORATION, FIRST AMERICAN
EAPPRAISEIT, COUNTRYWIDE FINANCIAL
CORPORATION, COUNTRYWIDE HOME EQUITY
LOAN TRUST, COUNTRY-WIDE BANK, FSB,
COUNTRYWIDE HOME LOANS, INC.,
LANDSAFE, INC., and ANGELO R. MOZILO,

        Defendants,

  and

FREDDIE MAC a/k/a Federal Home Loan Mortgage
Corporation,

        Nominal Defendant.

------------------------------------------------------------------ x

Case No. 08 CV 02423-BSJ

**FREDDIE MAC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO TRANSFER VENUE OR, ALTERNATIVELY, STAY THE PROCEEDINGS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii
PRELIMINARY STATEMENT ................................................................................................. 1
STATEMENT OF FACTS .......................................................................................................... 2
ARGUMENT ................................................................................................................................ 5
I.  THIS CASE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF VIRGINIA ............................................................................................................... 5
   A.  This Suit Could Originally Have Been Filed In The Eastern District Of Virginia ................................................................................................................ 6
   B.  The Transfer Of This Case To The Eastern District Of Virginia Promotes Convenience and Justice ..................................................................................... 6
      1.  The Convenience Of The Witnesses And Parties, The Location Of Relevant Documents, And The Ease Of Access To Sources Of Proof Favor Virginia .......................................................................................... 7
      2.  Virginia Is The Locus Of Operative Facts. ............................................... 7
      3.  Trial Efficiency And The Interest Of Justice Favor Virginia ................... 8
      4.  Virginia Is The Forum Most Familiar With Governing Law. ................... 8
      5.  Plaintiff's Choice Of Forum Does Not Favor Keeping This Action In The Southern District Of New York ..................................................... 8
II. ALTERNATIVELY, THIS COURT SHOULD STAY THIS ACTION PENDING THE OUTCOME OF THE SLC'S INVESTIGATION OF THE ALLEGATIONS ....... 10
CONCLUSION .......................................................................................................................... 13

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

Adair v. Microfield Graphics, Inc., No. 00 Civ. 0629, 2000 WL 1716340
   (S.D.N.Y. Nov. 16, 2000) ................................................................................................. 7

Cartier v. D & D Jewelry Imports, 510 F. Supp. 2d 344 (S.D.N.Y. 2007) ........................ 5, 6, 9

Firestone v. Wiley, 485 F. Supp. 2d 694 (E.D. Va. 2007) ..................................................... 11

Foster v. Litton Indus., Inc., 431 F. Supp. 86 (S.D.N.Y. 1977) ............................................... 8

Gilson v. Pittsburgh Forgings, Co., 284 F. Supp. 569 (S.D.N.Y. 1968) ............................... 10

Greystone CDE, LLC v. Sante Fe Pointe L.P., No. 07 CV 8377, 2008 WL 482291
   (S.D.N.Y. Feb. 20, 2008) ............................................................................................... 10

Koster v. Lumbermen's Mut. Co., 330 U.S. 518 (1947) ........................................................... 8

Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc., No. 06 Civ. 1942,
   2006 WL 1524590 (S.D.N.Y. June 5, 2006) ................................................................ 7, 9

One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp., 312 F. Supp. 2d 824
   (E.D. Va. 2004) ............................................................................................................... 6

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) .................................................................. 9

Questech Capital Corp. v. Flight Dynamics, Inc., 1984 WL 327
   (S.D.N.Y. May 7, 1984) ................................................................................................ 10

Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp., No. 04 CV 9266,
   2005 WL 236440 (S.D.N.Y. Feb. 1, 2005) ..................................................................... 8

In re Stillwater Min. Co. Sec. Litig., No. 02 Civ. 2806, 2003 WL 21087953
   (S.D.N.Y. May 12, 2003) ..................................................................................... 6, 8, 9, 10

In re Take-Two Interactive Software, Inc. Deriv. Litig., No. 06 Civ. 05279,
   2007 WL 1875660 (S.D.N.Y. June 29, 2007) ............................................................... 12

U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 924 (E.D. Va. 2005) ................. 6

Wolf v. Ackerman, 208 F. Supp. 1057 (S.D.N.Y. 1969) .......................................................... 8

TABLE OF AUTHORITIES CONTINUED

Page

Wright v. Krispy Kreme Doughnuts, Inc., No. 04 CV 00832, 2005 WL 1719927
    (M.D.N.C. Apr. 4, 2005) ........................................................................................... 12

**STATE CASES**

Curtis v. Nevens, 31 P.3d 146 (Colo. 2001) ........................................................................ 12

In re InformationUSA, Inc. S'holders Litig., No. 1956-CC, 2008 WL 762482
    (Del. Ch. Mar. 17, 2008) ......................................................................................... 12

**FEDERAL STATUTES**

28 U.S.C. § 1391 ...................................................................................................................... 6

28 U.S.C. § 1404(a) ....................................................................................................... 1, 2, 5, 6

Fed. R. Civ. P. 23.1 ............................................................................................................... 1, 10

**STATE STATUTES**

VA CODE ANN. § 13.1-601 et seq. ......................................................................................... 3

VA CODE ANN. § 13.1-672.1(B) .......................................................................................... 11

VA CODE ANN. § 13.1-672.1(C) ..................................................................................... passim

VA CODE ANN. § 13.1-672.4 .............................................................................................. 12

**TREATISES**

5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure
    § 1360 (2008) ........................................................................................................... 10

## **PRELIMINARY STATEMENT**

Nominal Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac" or the "Company") respectfully submits this memorandum of law in support of its motion to transfer venue pursuant to 28 U.S.C. § 1404(a) or, alternatively, stay the Plaintiff's Shareholder Derivative Complaint ("Complaint") pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and VA CODE ANN. § 13.1-672.1(C), pending the outcome of the investigation of Plaintiff's allegations by the Special Litigation Committee ("SLC") formed by the Company's Board of Directors.

On December 6, 2007, Plaintiff Robert Bassman, an alleged shareholder of Freddie Mac, sent a letter to Freddie Mac's Board of Directors at its offices in Virginia demanding that the Company, inter alia, institute a lawsuit against: (1) certain current and former officers and directors of Freddie Mac who in 2006 and 2007 allegedly mismanaged the Company, wasted Company assets, and breached their fiduciary duties to the Company; and (2) certain third parties that allegedly breached their contracts with, and warranties to, Freddie Mac and deceived and defrauded the Company. See Compl., Ex. A at 1-2. In response to Mr. Bassman's demand letter, the Company's Board of Directors formed the SLC, which commenced an investigation of the allegations that is ongoing. See infra at 3. Nonetheless, on March 10, 2008, Plaintiff filed this action purportedly on behalf of Freddie Mac, asserting essentially the same allegations that he made in his December 6, 2007 demand letter. In light of the fact that the SLC had been formed and is investigating the Plaintiff's allegations, on March 14, 2008, Freddie Mac sent Plaintiff's counsel a letter requesting Plaintiff to withdraw the lawsuit because it was premature or, at a minimum, stay the case pending the outcome of the SLC's investigation. Declaration of Steven Cole (hereafter, "Cole Dec."), ¶ 14. Plaintiff did not respond to Freddie Mac's request. Id.

As discussed below, the balance of factors under 28 U.S.C. § 1404(a) weighs heavily in favor of transferring this case to the Eastern District of Virginia. It is beyond dispute that this suit could have been brought in the Eastern District of Virginia and that a transfer to that forum promotes convenience and justice. The majority of the parties, likely witnesses, and relevant documents are located in or near the Eastern District of Virginia, and the Eastern District of Virginia is the situs of the alleged misconduct underlying the lawsuit. Moreover, in accordance with its bylaws, Freddie Mac follows the corporate governing practices and procedures of the laws of Virginia. Cole Dec., ¶ 4; Exhibit C (Freddie Mac's Bylaws) §11.3(a). In the event that the Court denies the request for transfer, this Court should stay this action under the Virginia Stock Corporation Act, VA CODE ANN. § 13.1-672.1(C), which provides in pertinent part:

> If the corporation commences a review and evaluation of the allegations made in the demand or complaint, <u>the court may stay any derivative proceeding for such period as the court deems appropriate.</u>

VA CODE ANN. § 13.1-672.1(C) (emphasis added). Accordingly, pursuant to applicable Virginia statutory law and well-established precedent, this action should be stayed pending the completion of the SLC's investigation.[1]

## STATEMENT OF FACTS

Freddie Mac, headquartered in McLean, Virginia, is a government-sponsored enterprise created by Congress in 1970 to, among other things, provide stability in the secondary market for residential mortgages by increasing the liquidity of mortgage investments and offering mortgage

---

[1] In the event this Court transfers this action to the United States District Court for the Eastern District of Virginia, Freddie Mac intends to renew its motion to stay in that venue, in view of the propriety of a stay given the pendency of an SLC investigation.

lenders greater access to private capital. Compl., ¶ 11; Cole Dec., ¶¶ 2, 5. Freddie Mac purchases home mortgages from lenders ("Seller/Servicers") and pools those mortgages into securities that investors can purchase. Cole Dec., ¶ 3. In accordance with its corporate Bylaws, Freddie Mac follows the corporate governing practices and procedures of the law of the Commonwealth of Virginia, including the Virginia Stock Corporation Act, codified at VA CODE ANN. § 13.1-601 et seq. Cole Dec., ¶ 4; Ex. C (Freddie Mac Bylaws) § 11.3(a).

Plaintiff Robert Bassman resides in New Jersey. Compl., ¶ 10. On December 6, 2007, Mr. Bassman's counsel sent a demand letter to Freddie Mac's Board of Directors at its offices in Virginia, demanding that the Company, inter alia, institute a lawsuit against those responsible for damages allegedly sustained by Freddie Mac and resulting from the Company's alleged mismanagement in 2006 and 2007. See Compl., Ex. A at 1-2. In the letter, Mr. Bassman claimed that this alleged mismanagement was due to the Company's failure to manage risk and to implement adequate credit standards, causing Freddie Mac to suffer billions of dollars in damages. Id. at 2.

In response to the December 6, 2007 letter, Freddie Mac's Board of Directors formed the SLC to investigate Mr. Bassman's claims. Compl., ¶ 5; Cole Dec., ¶ 12, Ex. B (Freddie Mac's Annual Report dated February 28, 2008, at 22-23). The SLC is comprised of three independent directors of Freddie Mac. Cole Dec., ¶ 12. The SLC has retained Hunton & Williams LLP, a prominent law firm with several offices in Virginia, to assist the SLC with the investigation. Cole Dec., ¶ 13. The SLC's investigation, which includes an extensive review of documents and interviews of witnesses, is currently ongoing. Id.

On March 10, 2008, Mr. Bassman filed the instant complaint against Freddie Mac in the United States District Court for the Southern District of New York, in which Mr. Bassman

alleges, inter alia, that certain current and former officers and directors of Freddie Mac mismanaged the Company, wasted Company assets, and breached their fiduciary duties to the Company. Plaintiff also alleges that defendant PricewaterhouseCoopers, LLP, the Company's independent auditor, aided and abetted the Company and others in the alleged wrongdoing, and further, that defendants Washington Mutual, Inc., Countrywide Financial Corporation and its affiliates, assisted by defendants First American Corporation and First American eAppraiseIT and their respective senior officers, breached their contracts with, and warranties to, Freddie Mac and deceived and defrauded the Company.

Although Plaintiff asserts that many of the acts alleged in his Complaint occurred in the Southern District of New York, the "locus of operative facts" is Virginia. In addition to having its headquarters in Virginia, 12 of Freddie Mac's 17 offices are also located in Virginia. Cole Dec., ¶ 5. Virtually all of Freddie Mac's business activities occur in Virginia, including activities relating to risk management, internal controls, investment decisions, credit policies, contracts with its Sellers/Servicers, financial reporting, and underwriting standards. Cole Dec., ¶ 6. In addition, the majority of Freddie Mac's press releases are issued from Virginia, and the majority of its investor conference calls take place from Virginia. Cole Dec., ¶¶ 9-10. All of the current and former officers who are named as defendants and against whom claims are asserted in this lawsuit perform (or performed) their work for Freddie Mac in Virginia. Cole Dec., ¶ 7. Accordingly, the alleged failure to implement sufficient risk management controls (see Compl., ¶ 4(a)) and to tighten underwriting standards (see Compl., ¶ 4(g)), as well as the issuance of the alleged false statements to the Company's stockholders and the public (see Compl., ¶ 4(f)) -- core allegations in Plaintiff's Complaint -- all relate to supposed activities that would have occurred in Virginia by officers and directors who work in Freddie Mac's headquarters.

A/72568833.1/3007870-0000330424

Moreover, the great majority of potential witnesses and potentially relevant documents are located in or close to McLean, Virginia. For instance, the overwhelming majority of Freddie Mac's officers and employees worked in Virginia. As of May 31, 2007, 4,752 of Freddie Mac's 5,267 employees (including 146 of Freddie Mac's 147 officers) work in Virginia. Cole Dec., ¶ 7. Likewise, the majority of relevant documents are located in Virginia. Freddie Mac's electronic documents are stored on servers located in Northern Virginia. Most paper documents are located within Freddie Mac's facilities in Northern Virginia, and those that are not are located in or near Northern Virginia. Cole Dec., ¶ 8. In addition, the agencies responsible for regulating Freddie Mac's activities, the United States Department of Housing and Urban Development ("HUD") and the Office of Federal Housing Enterprise Oversight ("OFHEO"), have close ties to Virginia because both are headquartered in Washington, D.C. (less than 15 miles from Freddie Mac's headquarters). Compl., ¶ 11; Cole Dec., ¶ 11. Thus, the convenience of the witnesses and parties and the location of relevant documents point to Virginia.

## ARGUMENT

### I. THIS CASE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF VIRGINIA.

Section 1404(a) of Title 28 of the United States Code provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The moving party must demonstrate that: "(1) the action is one that might have been brought in the proposed transferee forum"; and "(2) the transfer promotes convenience and justice." Cartier v. D & D Jewelry Imports, 510 F. Supp. 2d 344, 345-46 (S.D.N.Y. 2007). As discussed further below, both elements are satisfied here.

### A. This Suit Could Originally Have Been Filed In The Eastern District Of Virginia.

There is no question that this suit could originally have been filed in the Eastern District of Virginia. Under § 1404(a), a claim could originally have been filed where jurisdiction would be appropriate under 28 U.S.C. § 1391. See U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 924, 935-36 (E.D. Va. 2005); One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp., 312 F. Supp. 2d 824, 829 (E.D. Va. 2004). Section 1391(b) provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Freddie Mac's headquarters is located in the Eastern District of Virginia; a substantial part of the alleged events or omissions giving rise to the Complaint would have occurred in the Eastern District of Virginia; and the overwhelming majority of Freddie Mac's officers and employees -- including all of the officers or former officers named as Defendants -- work (or worked) in the Eastern District of Virginia. See infra Section B. Accordingly, venue would have been proper in the Eastern District of Virginia.

### B. The Transfer Of This Case To The Eastern District Of Virginia Promotes Convenience and Justice.

Likewise, transferring this case to the Eastern District of Virginia promotes convenience and justice. District courts have broad discretion in evaluating convenience and whether the transfer is in the interest of justice. Cartier, 510 F. Supp. 2d at 346; In re Stillwater Min. Co. Sec. Litig., No. 02 Civ. 2806, 2003 WL 21087953, at *3 (S.D.N.Y. May 12, 2003). A non-exclusive list of factors that courts consider when making this determination includes: (1) the convenience of witnesses; (2) the convenience and means of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the

operative facts; (5) trial efficiency and the interest of justice based on the totality of the circumstances; (6) a forum's familiarity with the governing law; and (7) plaintiff's choice of forum. See Cartier, 510 F. Supp. 2d at 346. Courts routinely hold that the convenience of witnesses is the most important factor in the transfer of venue analysis. Laborers Local 100 & 397 Pension Fund, No. 06 Civ. 1942, 2006 WL 1524590, at *5 (S.D.N.Y. June 5, 2006); Adair v. Microfield Graphics, Inc., No. 00 Civ. 0629, 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000).

1. **The Convenience Of The Witnesses And Parties, The Location Of Relevant Documents, And The Ease Of Access To Sources Of Proof Favor Virginia.**

The convenience of the witnesses and the parties as well as the location of relevant documents and the relative ease of access to sources of proof greatly favor transferring this case to the Eastern District of Virginia. Most of the potentially relevant witnesses in this action (i.e., the Freddie Mac officers named as defendants, other Freddie Mac employees and officers, and Freddie Mac's regulators) work in or near the Eastern District of Virginia. Cole Dec., ¶¶ 7, 11. Indeed, virtually all of the Company's business activity occurs in the Eastern District of Virginia. Cole Dec., ¶ 6. Not surprisingly, the great majority of potentially relevant documents and sources of proof would be located in or just outside of the Eastern District of Virginia, where Freddie Mac stores both paper and electronic documents. Cole Dec., ¶ 8.

2. **Virginia Is The Locus Of Operative Facts.**

The gravamen of Plaintiff's Complaint is the alleged mismanagement by certain current and former officers and directors, including alleged failures to implement sufficient risk management controls and to tighten underwriting standards (see Compl., ¶¶ 4(a), 4(g)), as well as the issuance of alleged false statements to the Company's stockholders and the public (see Compl., ¶ 4(f)). Virtually all of this alleged wrongdoing would have occurred in Virginia, where Freddie Mac maintains its headquarters and most of its other offices, and where most of its employees work. Without a doubt, Virginia is the locus of operative facts.

### 3. Trial Efficiency And The Interest Of Justice Favor Virginia.

Similarly, transferring this action to the Eastern District of Virginia facilitates trial efficiency and is in the interest of justice. In evaluating these factors, courts are guided by the "center of gravity" of the litigation. Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp., No. 04 CV 9266, 2005 WL 236440, at *9 (S.D.N.Y. Feb. 1, 2005) (granting motion to transfer venue from New York to Wyoming and stating: "[T]he 'center of gravity' of this litigation is in Wyoming. Almost all of the Defendants, and all of the non-party witnesses and the relevant and voluminous documents, are in or near Wyoming. The Defendant company's headquarters are in Wyoming and the alleged misrepresentations and omissions, which are at the heart of Plaintiffs' case, all occurred in Wyoming"); see also In re Stillwater Min. Co. Sec. Litig., 2003 WL 21087953, at *5. Clearly, for the same reasons provided above, see supra Section B(2), the "center of gravity" in the instant case is the Eastern District of Virginia.

### 4. Virginia Is The Forum Most Familiar With Governing Law.

The forum's familiarity with the governing law also supports transferring the case to Virginia. In accordance with its by-laws, Freddie Mac has chosen Virginia law to apply to its corporate governance practices and procedures. Cole Dec., ¶ 4. Therefore, Virginia law will likely govern the substantive claims in the Complaint, and judges in the Eastern District of Virginia will be more familiar with Virginia law than those in the Southern District of New York.

### 5. Plaintiff's Choice Of Forum Does Not Favor Keeping This Action In The Southern District Of New York.

While the plaintiff's choice of forum is given substantial weight in other types of cases, it has little weight in a shareholder's derivative suit. See Foster v. Litton Indus., Inc., 431 F. Supp. 86, 87 (S.D.N.Y. 1977); Wolf v. Ackerman, 208 F. Supp. 1057 (S.D.N.Y. 1969); see also Koster v. Lumbermen's Mut. Co., 330 U.S. 518, 524 (1947) (a stockholder's derivative action) ("[W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right

go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.").

Indeed, even in non-derivative cases, a plaintiff's choice of forum is given minimal deference where, as here, the plaintiff does not live in the district in which he brings suit. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981) ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."). Here, because the Plaintiff resides in New Jersey, his choice of New York as the forum for this action should be given little weight.

In addition, a plaintiff's choice of forum is significantly diminished where the operative facts have no connection to the chosen district. See Cartier, 510 F. Supp. 2d at 346 ("[T]he weight accorded to a plaintiff's choice of venue is significantly diminished ... where the operative facts have no connection to the chosen district."). As discussed above, the facts at issue in the instant case are most closely connected to Virginia. Plaintiff has not, and cannot, demonstrate such a connection to New York.

The Complaint alleges in passing that Freddie Mac's stock trades on the NYSE. Compl., ¶ 11. Courts have made it clear that the fact that a company's stock is traded on the NYSE is not sufficient to withstand a motion to transfer venue. As one court explained:

> Plaintiffs do not allege, nor can they, that any of the allegedly false or misleading statements were issued from anywhere within this forum. Although Plaintiffs correctly point out that Bausch & Lomb's stock is traded on the New York Stock Exchange ("NYSE"), which is located in the SDNY, and many of the analysts who follow Bausch & Lomb stock are located in New York City, <u>these contacts don't do it. If they did, the SDNY would have even more business and every plaintiff that sued a NYSE firm could nestle in right here at 500 Pearl Street</u>.

Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc., 2006 WL 1524590, at *4 (granting motion to transfer venue) (emphasis added); see also In re Stillwater Min. Co. Sec.

A/72568833.1/3007870-0000330424

Litig., 2003 WL 21087953, at *5; Gilson v. Pittsburgh Forgings, Co., 284 F. Supp. 569, 571 (S.D.N.Y. 1968).

As explained by the Court in Stillwater, "[t]he purpose of § 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." 2003 WL 21087953, at *2 (internal quotations and citations omitted). In view of the overwhelming connections that this case has to Virginia and the virtually nonexistent ones to New York, keeping this action in the Southern District of New York would unquestionably contravene the purpose of Section 1404(a). The case should be transferred to the Eastern District of Virginia.

## II. ALTERNATIVELY, THIS COURT SHOULD STAY THIS ACTION PENDING THE OUTCOME OF THE SLC'S INVESTIGATION OF THE ALLEGATIONS.

Alternatively, pursuant to Rule 23.1 and the Virginia Stock Corporation Act, this Court should stay the proceedings in this derivative suit to allow the SLC reasonable opportunity to review and evaluate Plaintiff's allegations pursuant to Virginia law.[2] See Fed. R. Civ. P. 23.1 advisory committee's note ("The court has inherent power to provide for the conduct of the proceedings in a derivative action, including the power to determine the course of the

---

[2] By filing this motion to stay, Freddie Mac has tolled the time period within which it must answer or otherwise respond to the Complaint. As Wright & Miller's seminal civil practice treatise states: "Historically, motions to stay have been recognized as tolling the time period for answering a complaint because consideration of these motions prior to the answer has been found to maximize the effective utilization of judicial resources." 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1360 (2008) (emphasis added). A number of federal courts in New York have issued decisions consistent with this rule. See Greystone CDE, LLC v. Sante Fe Pointe L.P., No. 07 CV 8377, 2008 WL 482291 (S.D.N.Y. Feb. 20, 2008) (denying cross-motion for default where defendant had filed motion to stay); Questech Capital Corp. v. Flight Dynamics, Inc., 1984 WL 327, at *1, n.1 (S.D.N.Y. May 7, 1984) ("It is clear . . . that [the defendant's] motion to stay all proceedings until final determination of the action pending between the parties in the Circuit Court for the State of Oregon, tolled its time to answer or otherwise move with respect to the complaint. . . . [The defendant] was under no affirmative duty to file further motions or proceedings.") (emphasis added). The tolling rule is particularly appropriate here, where the applicable Virginia statute expressly contemplates a court staying a derivative action pending an SLC investigation and, thereafter, entertaining a motion to dismiss in the event the SLC determines not to pursue claims set forth in the demand.

proceedings...."); VA CODE ANN. § 13.1-672.1(C) (court may stay derivative allegation to allow corporation to review and evaluate claims).

The Virginia Stock Corporation Act, which is based on the Model Business Corporation Act, provides that "no shareholder shall commence a derivative suit unless the shareholder makes a demand and: (1) 90 days have passed; (2) the shareholder's demand is rejected within 90 days; or (3) the corporation would suffer irreparable harm if the shareholder waited for the 90 days to expire. VA. CODE ANN. § 13.1-672.1(B); see also Firestone v. Wiley, 485 F. Supp. 2d 694, 701 n.7 (E.D. Va. 2007) (dismissing claims where plaintiff failed to make demand). This demand rule is "intended to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs." 2 Model Business Corporation Act Ann., § 7.42 (4th ed. 2008) (internal quotations and citation omitted) (emphasis added). Further, "deference to directors' judgments may also result in the termination of meritless actions brought solely for their settlement or harassment value." Id.

Virginia's Act further provides that "[i]f the corporation commences a review and evaluation of the allegations made in the demand or complaint, the court may stay any derivative proceeding for such period as the court deems appropriate." VA CODE ANN. § 13.1-672.1(C) (emphasis added). Like Virginia's demand requirement, the clear purpose of this provision is to give the corporation due opportunity to consider whether maintaining the suit is in the best interests of the corporation, on whose behalf the suit is brought. Significantly, the SLC process provides a mechanism for the dismissal of a case in the event the SLC determines not to pursue claims set forth in the demand. In essence, the statute provides that a court must dismiss a derivative complaint if a quorum of disinterested directors or a committee of disinterested directors appointed by a majority vote of disinterested directors: (1) conducted a review and evaluation -- adequately informed in the circumstances -- of the allegations; (2) determined in good faith that the claim is not in the corporation's best interests; and (3) submits in support of a

motion to terminate a short and concise statement of its reasons for rejecting the demand. VA CODE ANN. § 13.1-672.4.

Upon receiving Mr. Bassman's demand letter, the Company's Board of Directors created the SLC to investigate the allegations in the demand letter - the same allegations that form the basis of the Complaint. In these circumstances, "[c]ourts normally grant a stay of proceedings for a reasonable period of time to permit an SLC to complete its investigation." In re Take-Two Interactive Software, Inc. Deriv. Litig., No. 06 Civ. 05279, 2007 WL 1875660, at *2 (S.D.N.Y. June 29, 2007). Indeed, if a case is not stayed while "a duly authorized litigation committee was investigating whether or not it would be in the best interests of the corporation" -- precisely the type of "review and evaluation" referred to in Virginia's stay provision -- then "the very justification for creating the litigation committee in the first place might well be subverted." In re infoUSA, Inc. S'holders Litig., No. 1956-CC, 2008 WL 762482, at *2 (Del. Ch. Mar. 17, 2008) (Chandler, C.) (granting stay under Delaware law).

For example, in Wright v. Krispy Kreme Doughnuts, Inc., No. 04 CV 00832, 2005 WL 1719927 (M.D.N.C. Apr. 4, 2005), the court granted a motion to stay under North Carolina's stay provision, North Carolina General Statutes § 55-7-43, which is identical to the Virginia provision. The court held that "because the findings of the Special Committee will play an important role in the outcome of the action, a stay is warranted." Id. at *1; see also In re Take-Two Interactive Software, Inc., 2007 WL 1875660, at *2 (noting that "[c]ourts normally grant a stay of proceedings for a reasonable period of time to permit an SLC to complete its investigation" and citing cases, including one in which a court granted stay of twelve months from the time that the special litigation committee was formed); Curtis v. Nevens, 31 P.3d 146, 149 (Colo. 2001) ("Most courts grant a stay once an SLC has been appointed. . . . The reason for granting a stay in such cases is to allow the SLC time to finish its task, that is to determine whether it is in the best interests of the corporation to maintain the derivative suit.") (citations omitted). Consistent with these authorities, a stay is warranted here under Virginia's statute so

that the SLC can fulfill its role in reviewing and evaluating whether the derivative action is in Freddie Mac's best interests.

Accordingly, in the event that this Court declines to transfer this action to the Eastern District of Virginia, Freddie Mac respectfully requests pursuant to § 13.1-672.1(C) that this Court stay the action to permit the SLC a reasonable opportunity to conclude its investigation of Mr. Bassman's allegations.

## CONCLUSION

For the foregoing reasons, Freddie Mac respectfully requests that this Court transfer this action to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a), or, alternatively, stay this action pursuant to VA CODE ANN. § 13.1-672.1(C) pending the outcome of the SLC's investigation.

Dated: New York, New York
      June 16, 2008

**BINGHAM McCUTCHEN LLP**

By: s/Kenneth I. Schacter
    Kenneth I. Schacter
    399 Park Avenue
    New York, NY 10022
    Tel: (212) 705-7000
    Fax: (212) 752-5378
    kenneth.schacter@bingham.com

    Jordan D. Hershman
    Jason D. Frank
    One Federal Street
    Boston, MA 02110-1726
    Tel: (617) 951-8000
    Fax: (617) 951-8736

    *Attorneys for Nominal Defendant Freddie Mac*