UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R.S. BASSMAN, Derivatively on Behalf of FREDDIE MAC a/k/a Federal Home Loan Mortgage Corporation and its shareholders,<br><br>      Plaintiff,<br><br>      v.<br><br>RICHARD F. SYRON, PATRICIA L. COOK, ANTHONY PISZEL, EUGENE M. MCQUADE, RICHARD KARL GOELTZ, STEPHEN A. ROSS, SHAUN F. O'MALLEY, ROBERT R. GLAUBER, BARBARA T. ALEXANDER, WILLIAM M. LEWIS, JR., JEFFREY M. PEEK, GEOFFREY T. BOISI, RONALD F. POE, WASHINGTON MUTUAL, INC., PRICEWATERHOUSECOOPERS, LLP, KERRY K. KILLINGER, ANTHONY R. MERLO, JR., FIRST AMERICAN CORPORATION, FIRST AMERICAN EAPPRAISEIT, COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME EQUITY LOAN TRUST, COUNTRY-WIDE BANK, FSB, COUNTRYWIDE HOME LOANS, INC., LANDSAFE, INC., and ANGELO R. MOZILO,<br><br>      Defendants,<br><br>     - and -<br><br>FREDDIE MAC a/k/a Federal Home Loan Mortgage Corporation,<br><br>      Nominal Defendant. | Case No. 08-cv-2423-BSJ |
| ESTHER SADOWSKY TESTAMENTARY TRUST, Derivatively on Behalf of Federal Home Loan Mortgage Corp.,<br><br>      Plaintiff,<br><br>      v.<br><br>RICHARD F. SYRON, ANTHONY PISZEL, EUGENE MCQUADE, MARTIN BAUMANN, BARBARA T. ALEXANDER, GEOFFREY T. BOISI, MICHELLE ENGLER, ROBERT R. GLAUBER, RICHARD KARL GOELTZ, SHAUN F. O'MALLEY, THOMAS S. JOHNSON, STEPHEN A. ROSS, WILLIAM M. LEWIS, JR., and NICOLAS P. RETSINAS,<br><br>      Defendants,<br><br>     - and -<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>      Nominal Defendant. | Case No. 08-cv-5221-BSJ<br><br>**PLAINTIFF ESTHER SADOWSKY TESTAMENTARY TRUST'S OPPOSITION TO PLAINTIFF BASSMAN'S MOTION TO CONSOLIDATE RELATED CASES AND FOR ENTRY OF PROPOSED CASE MANAGEMENT ORDER AND IN SUPPORT OF ITS CROSS-MOTION FOR ENTRY OF PROPOSED CASE MANAGEMENT ORDER** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................... ii

PRELIMINARY STATEMENT .................................................. 1

PROCEDURAL HISTORY ..................................................... 4

ARGUMENT ............................................................... 7

    I.    THE DERIVATIVE ACTIONS DO NOT NEED TO BE CONSOLIDATED ... 7

    II.   APPOINTMENT OF LEAD COUNSEL ................................. 9

        A.    SADOWSKY'S COUNSEL SHOULD BE APPOINTED LEAD
            COUNSEL .................................................. 9

PLAINTIFF'S CROSS-MOTION FOR ENTRY OF PROPOSED PRE-TRIAL ORDER ..... 13

CONCLUSION ............................................................ 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

Amro Verzekeringen BV v. Geologistics Americas, Inc.,
 485 F.3d 85 (2d Cir. 2007) .................................................................................. 7

Doe v. Village of Saugerties,
 2007 U.S. Dist. LEXIS 45159 (N.D.N.Y. June 18, 2007) ..................................... 7

Dollens v. Zionts,
 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001) ....................................... 12

In re Repetitive Stress Injury Litigation,
 11 F.3d 368 (2d Cir. 1993) ................................................................................ 7, 8

Sadowsky v. Brendsel,
 05-CV-2596 (S.D.N.Y. 2005) ................................................................................ 1

United States v. Yousef,
 327 F.3d 56 (2d Cir. 2003) .................................................................................... 7

## STATE CASES

TCW Technology Limited Partnership v. Intermedia Communications, Inc.,
 2000 Del. Ch. LEXIS 147 (Del. Ch. Oct. 17, 2000) ........................................... 12

## FEDERAL STATUTES

Fed. R. Civ. P. 21 ............................................................................................................. 8

Plaintiff, the Esther Sadowsky Testamentary Trust ("Sadowsky"), by its counsel, respectfully submits this Memorandum of Law in Opposition to Plaintiff Bassman's Motion to Consolidate Related Cases and for Entry of Proposed Case Management Order and in Support of its Cross-Motion for Entry of Proposed Case Management Order.

## PRELIMINARY STATEMENT

Plaintiff Robert S. Bassman ("Bassman") presents no argument to demonstrate the common factual and legal issues between his complaint filed on March 10, 2008 (the "Bassman Complaint") and Sadowsky's complaint filed on June 6, 2008 (the "Sadowsky Complaint") though it was entirely his burden to do so upon making his motion. Bassman does not even attempt to make any such showing for good reason, the numerous differences between the two operative complaints at the time Bassman made his motion demonstrate that such factual and legal issues are not sufficiently common to require consolidation. Moreover, no need for appointment of lead counsel has been presented. The lack of any such need is amply shown by the fact that, in prior derivative litigation brought in this Court[1] before Judge Sprizzo for the benefit of Freddie Mac regarding one of the largest corporate financial restatements in United States history, an outstanding result was achieved for Freddie Mac notwithstanding the Court's decision to not appoint lead counsel. See Declaration of Patrick K. Slyne ("Slyne Decl.") Exh. A at 30:5-10. Surely, the excellent result achieved demonstrates that Judge Sprizzo's decision was well made. Given the current circumstances, Bassman should have, but did not, demonstrate that the two derivative cases pending now before this Court could not be effectively litigated here without appointment of lead counsel, as the two prior Freddie Mac derivative actions were.

---

[1] Sadowsky v. Brendsel, 05-CV-2596 (S.D.N.Y. 2005).

In the event that the Court believes consolidation and appointment of lead counsel is necessary, Sadowsky's counsel should be appointed as lead. Among other reasons, Sadowsky's counsel has prepared a detailed, high quality complaint (Slyne Decl. Exh. B), based upon their own thorough and independent investigation. Sadowsky and its counsel have a proven track record of efficiently and effectively litigating highly complex legal claims on behalf of Freddie Mac. Indeed, the successful resolution of the prior Freddie Mac derivative litigation was only achieved after Sadowsky's counsel vigorously litigated the case over the course of three years and devoted over eighteen thousand hours of attorney time and over $760,000 in out-of-pocket expense. Slyne Decl. Exhs. S, T. Substantial efficiencies in this derivative litigation will be achieved by Sadowsky's counsel's familiarity with Freddie Mac's complex operations and corporate governance practices. Though Bassman's counsel represented a plaintiff in the prior Freddie Mac derivative litigation, they undertook only a very small fraction of the work in that case (Slyne Decl. Exhs. U, V), did not attend a single deposition, did not question a single witness on the record, and noticed no depositions.

Unlike the Sadowsky Complaint, portions of the Bassman Complaint (Slyne Decl. Exh. C) appear to have been substantially copied from the Securities Action[2] filed <u>against</u> Freddie Mac, which reflects, at best, scant investigative effort by his counsel. Also, unlike the Sadowsky Complaint, the Bassman Complaint omits defendants critical to the successful maintenance of the very derivative claim it purports to assert. Significantly, the Bassman Complaint did not name, among others, presiding Freddie Mac directors Thomas Johnson, Michelle Engler and

---

[2]<u>Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corp., et al.</u>, 4:08-cv-160 (N.D. Ohio 2008) (the "Securities Action") (Slyne Decl. Exh. D).

Nicolas Retsinas. Defendant Johnson sits on Freddie Mac's Governance, Nominating and Risk Oversight Committee (the "GNROC") – which would have been responsible for the very sort of oversight failures alleged in the Bassman Complaint; again, a potentially devastating error. Defendants Engler and Retsinas sit on Freddie Mac's Special Derivative Litigation Committee of the Board (the "SDLC") and the failure of Bassman to name them as defendants was a fatal error that could well have caused dismissal of his action. How could directors such as Engler and Retsinas, plainly identified as directors in the proxy statement (Slyne Decl. Exh. E) and Freddie Mac press releases and public filings, be omitted from the Bassman Complaint? Apparently, they were omitted because the Securities Action complaint (Slyne Decl. Exh. D) that Bassman's counsel substantially copied portions from, did not mention those Freddie Mac directors, or name them as defendants in the shareholder class action.[3] Rather than thoroughly investigate the claims to be asserted on behalf of Freddie Mac, Bassman's counsel seems to have chosen to rely upon class action counsel's investigation related to a cause of action antagonistic to Freddie Mac and, in doing so, abdicated their duties to vigorously investigate the cause of action to be asserted on behalf of Freddie Mac, as well as to identify the proper defendants to name regarding that cause of action.

Moreover, Bassman's derivative claims against the third party loan originators and appraisers are likewise antagonistic to Sadowsky's Complaint. Bassman's assertion that the third parties defrauded Freddie Mac would tend to exculpate the Freddie Mac defendants from liability since Bassman nowhere alleges the directors and officers of Freddie Mac were aware of any

---

[3] The parties section in the Bassman Complaint (Slyne Decl. Exh. C) is substantially copied from the Securities Action complaint (Slyne Decl. Exh. D). Compare the Bassman Complaint ¶¶ 12-24 with the Securities Action complaint at ¶¶ 16-22 for such examples.

indications of the fraudulent scheme Bassman pleads. Bassman's antagonistic claim of fraud should be severed so that it can be separately litigated, perhaps in coordination with the fraud claims already being prosecuted in the Northern District of Ohio.

The record here is clear, based upon the thoroughness of investigation, high quality pleading filed, familiarity with Freddie Mac and many of its directors named as derivative defendants, proven track record of vigorously, efficiently and successfully litigating complex legal claims on behalf of Freddie Mac, Sadowsky's counsel is the best choice to serve as lead counsel.

## PROCEDURAL HISTORY

On November 21, 2007, Sadowsky, in a letter addressed to Freddie Mac's Board of Directors, demanded that the Freddie Mac Board take action to recover the substantial losses caused to Freddie Mac by engaging in prohibited speculative practices in violation of its Congressionally issued charter and the mandates of safe and sound operation.  Slyne Decl. Exh. F.  On January 18, 2008, the Board corresponded with Sadowsky's counsel (Slyne Decl. Exh. G) and again did so on March 21, 2008 (Slyne Decl. Exh. H).  Despite the communications between Sadowsky's counsel and the Board's representative, however, the demanded actions were not taken by the Board.  Rather, the SDLC was appointed by the Freddie Mac Board upon the making of demand by Sadowsky.

Among their efforts to thoroughly investigate the cause of action against Freddie Mac's Board and senior management, Sadowsky's counsel made a request to Freddie Mac's safety-and-soundness regulator, the Office of Federal Housing Enterprise Oversight ("OFHEO"), pursuant to the Freedom of Information Act ("FOIA"), for documents relevant to the improper speculative

practices undertaken by the defendants here, as well as other related matters. Slyne Decl. Exh. I. Sadowsky's counsel met and conferred with OFHEO staff members, including its Associate General Counsel, to discuss the scope of the requested documents, to facilitate OFHEO staff's search for responsive documents, and to prioritize the order in which the search would be made and documents produced. Slyne Decl. Exhs. J, K. On June 4, 2008, Sadowsky's counsel was informed that OFHEO staff had identified over twelve thousand documents as responsive, but OFHEO has thus far refused to produce them contending they reflect confidential matters and non-public examination reports. Slyne Decl. Exh. L.

Upon the denial of the FOIA request, on June 6, 2008 Sadowsky instituted suit against the defendants on behalf of Freddie Mac.[4] The Sadowsky Complaint alleges, among other things, that the defendants, in pursuit of immediate profit and to capture market share, caused Freddie Mac to improperly speculate in high risk mortgages, and bet Freddie Mac's financial future on the prospect that the housing market bubble would continue indefinitely. When housing prices began to decline, defendants' choices proved disastrous. Freddie Mac's charter and regulations promulgated by OFHEO prohibit just such speculation and, to the contrary, mandate the safe and sound operation of the Company. The defendants had the fiduciary duty to operate Freddie Mac in accord with its Charter and the mandates of safe and sound operation, as well as the duties of loyalty, care and good faith. Their knowing undertaking of prohibited speculative practices was in violation of their fiduciary duties and those violations have caused severe damage to Freddie

---

[4]Sadowsky's counsel has appealed the denial of the FOIA request. OFHEO extended its time to consider the appeal due to its need for "consultations," but has indicated that a ruling should be issued by August 28, 2008. Slyne Decl. Exh. M.

5

Mac's business, financial condition and reputation, as well as subjected the Company to securities class action litigation and heightened regulatory scrutiny going forward.

The allegations of the Sadowsky Complaint have been further substantiated by facts that have come to light after its filing. Among other things, an August 2, 2008 front page article in The New York Times revealed that defendant Richard Syron ("Syron"), Freddie Mac's CEO and Chairman, was presented with a memorandum that stated Freddie Mac's future was at risk due to the Company's speculation in risky mortgages and advised the cessation of such practices. Indeed, the Chief Risk Officer, who authored the memo, briefed Freddie Mac's GNROC on the subject. Defendant Syron and the Board rejected the Chief Risk Officer's warnings.

Bassman's counsel misleadingly seems to argue in their memorandum that the filing of the Sadowsky Complaint came out of the blue, an unexpected surprise to the parties. Nothing could be further from the truth.[5] Bassman's counsel was fully aware of, among other things, that: Sadowsky made demand on Freddie Mac's Board of Directors at least two weeks prior to Bassman; the SDLC was formed in response to Sadowsky's demand; and Freddie Mac corresponded with Sadowsky's counsel on matters relating to the demand and – as admitted in Bassman's own papers – then cut and pasted that response to Bassman after he filed suit. Slyne Decl. Exhs. N-P. Moreover, Bassman's counsel was entirely aware of Sadowsky's efforts to obtain non-public documents from OFHEO and Sadowsky's imminent filing of a derivative action unless the terms of the demand were met. Id.

---

[5] Indeed, in the prior Freddie Mac derivative litigation, Bassman's counsel made a similarly disingenuous argument concerning a purported absence of knowledge of the previous Sadowsky action, which was soundly rejected by Judge Sprizzo. Slyne Decl. Exh. A at 25:14-26:8.

## ARGUMENT

I. **THE DERIVATIVE ACTIONS DO NOT NEED TO BE CONSOLIDATED**

Bassman fails to acknowledge that the burden rests with the party moving for consolidation to show the necessity therefor. In re Repetitive Stress Injury Litigation, 11 F.3d 368, 373 (2d Cir. 1993); Doe v. Village of Saugerties, 2007 U.S. Dist. LEXIS 45159, at * 9 (N.D.N.Y. June 18, 2007). In support of his motion, Bassman only makes the conclusory statements that consolidation is necessary and that there are common issues of fact and law between the two cases. Since it is entirely his burden and he has made no attempt at a showing to support that burden, Bassman's motion must be denied.[6]

Bassman's conclusory statement that the Sadowsky Complaint and the Bassman Complaint involve common questions of law and fact is not only insufficient to carry his burden, but is incorrect. In fact, they largely do not. The Sadowsky Complaint carefully analyzes the genesis of the Freddie Mac's improper strategy to boost reported near term profits and gain market share through transacting in speculative mortgages on a massive scale; tracks the ramping up of such transactions; describes Freddie Mac's periodically reported financial position; describes Freddie Mac's need to – and inability to – conform to minimum capital requirements imposed by OFHEO; Freddie Mac's diminished ability to provide liquidity in the mortgage market – its statutorily required mission – due to its speculative activities; and discusses Freddie Mac's inability to timely report financial information.

---

[6] Any belated attempt by Bassman to resurrect his motion by injecting previously unasserted grounds in his reply brief here should be soundly rejected. See, e.g., Amro Verzekeringen BV v. Geologistics Ams., Inc., 485 F.3d 85, 97 n.12 (2d Cir. 2007) (declining to consider argument raised for the first time in a reply brief); United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003) (same).

7

The Bassman Complaint, to the contrary, pleads a claim that there was a failure of supervision at Freddie Mac that, among other things, allowed the Company to be defrauded by third parties. Thus, there is no substantial overlap between the two complaints as Bassman suggests. In re Repetitive Stress Injury Litigation, 11 F.3d at 373 (in determining whether to consolidate actions, court needs to "examine the special underlying facts with close attention."). Indeed, the Bassman Complaint pleads very few facts at all with regard to Freddie Mac, its Board or management's actions, other than background material. The bulk of the facts pled by Bassman are with regard to those third parties he contends defrauded Freddie Mac. Thus, the focus of the Bassman Complaint seems to be on the aspect that is most dissimilar from the Sadowsky Complaint. Indeed, the Bassman Complaint asserts claims antagonistic to those asserted in the Sadowsky Complaint. Sadowsky's allegations that defendants caused Freddie Mac to engage in improper speculative practices would be undercut by Bassman's allegations that the same defendants were the victims of a fraudulent scheme carried out by third parties. Bassman's claims should be severed so that they may be separately litigated, perhaps in tandem with the other fraud claims asserted in the Securities Action.[7] Bassman can litigate his claims against those third parties without any duplication of effort or inefficiencies vis-a-vis Sadowsky's litigation since Sadowsky does not name those parties as defendants.

Bassman's eleventh hour amendment of his complaint (Slyne Decl. Exh. AA) to conform his allegations to, and substantially copy[8] the allegations of, the Sadowsky Complaint is a stark

---

[7] See Fed. R. Civ. P. 21 ("[a]ny claim against a party may be severed and proceeded with separately").

[8] Compare Bassman's amended complaint (Slyne Decl. Exh. AA) ¶¶ 98-106 with the Sadowsky Complaint (Slyne Decl. Exh. B) ¶¶ 84-92 for examples of verbatim copying of the

8

admission that the lack of consolidation here has not impeded either party from litigating their own case. Indeed, the Sadowsky Complaint's thorough and particularized articulation of the cause of action has benefitted Bassman and his counsel in that they now have a well pled <u>derivative</u> complaint from which to conform and substantially copy their allegations, including the identification of the proper Freddie Mac directors and officers to name as parties.

Ultimately, plaintiff Bassman presents no reason – as he is required to do – why discovery cannot be effectively coordinated between the two actions absent consolidation.

## II.     APPOINTMENT OF LEAD COUNSEL

Bassman presents no real reason why a lead counsel needs to be appointed. There have been no case management difficulties presented and, indeed, in the prior Freddie Mac derivative litigation counsel worked efficiently to achieve an outstanding result for the Company despite the fact that there was no appointment of lead counsel. Slyne Decl. Exh A at 30:5-10. However, if lead counsel is to be appointed, the clear choice for that position is Sadowsky's counsel.

### A.     SADOWSKY'S COUNSEL SHOULD BE APPOINTED LEAD COUNSEL

Sadowsky's counsel – who successfully litigated the prior Freddie Mac derivative litigation, in addition to their numerous other outstanding recoveries in the derivative litigation field (Slyne Decl. Exhs. Q, R) – should be appointed lead counsel here. Notably, though Bassman's counsel represented a plaintiff in the prior Freddie Mac derivative litigation, his

---

Sadowsky Complaint by Bassman's counsel. Compare Bassman's amended complaint ¶¶ 16, 27, 28, 29, 57, 58, 60, 62, 66, 84, 85, 89, 91, 92, 95, 96 with the Sadowsky Complaint ¶¶ 13, 17, 21, 24, 29, 30, 32, 37, 42, 45, 47, 63, 73, 74, 75-80, 81, respectively, for examples of allegations added to Bassman's amended complaint to conform with allegations pled in the Sadowsky Complaint. For Bassman's counsel's verbatim copying of plaintiff Sadowsky's complaint in previous Freddie Mac derivative litigation see Slyne Decl. Exh. A at 26:9-28:3.

counsel – which constituted two of the four firms representing plaintiffs in the prior derivative litigations – worked substantially less than 10% of the nearly twenty thousand hours of attorney time devoted[9] to achieving that outstanding result, did not attend a single deposition or question a witness on the record, or devote the substantial amount of hours required to learn the intricacies of Freddie Mac's complex operational structure, business, and corporate governance practices.

Sadowsky's counsel, through their own diligent effort, gained familiarity with Freddie Mac's business, operations and corporate governance practices. Sadowsky's counsel has previously deposed Freddie Mac's directors, including numerous of the defendants currently named, such as defendants Baumann, Alexander, Boisi, Engler, Goeltz, O'Malley, Johnson, Ross and Lewis, as well as questioned on the record nearly 70 witnesses all told in the litigation, and reviewed millions of pages of internal, non-public documents reflecting the inner workings and corporate governance practices of Freddie Mac. Such experience puts Sadowsky's counsel in a unique position to conduct complex discovery here in the most efficient and effective manner possible. Indeed, Freddie Mac itself recognized the real derivative litigant and counsel when it responded to the Sadowsky demand letter and, as alleged by Bassman, ignored Bassman's duplicative demand letter.

As to the quality of the respective pleadings, we respectfully submit both complaints for the Court's review. The Sadowsky Complaint (Slyne Decl. Exh. B) carefully pleads an action for breach of fiduciary duty detailing a series of pertinent facts in support of the claim. The Bassman

---

[9]As reflected in the declarations submitted to Judge Sprizzo in support of the derivative settlement in the prior Freddie Mac derivative action, Sadowsky's counsel devoted over 18,000 hours in attorney time and expenses of over $760,000 (Slyne Decl. Exhs. S, T), while Bassman's counsel devoted only about 1,450 hours in attorney time and expense of a little over $31,000 (Slyne Decl. Exhs. U,V).

Complaint (Slyne Decl. Exh. C) only pleads a series of conclusory allegations with regard to Freddie Mac, its Board and management's conduct. While it does allege certain facts with regard to the third party loan originators and appraisers Bassman claims defrauded or breached contracts with Freddie Mac, these facts, as with virtually all of the allegations asserted with regard to those third parties, are substantially copied from either the Securities Action complaint or the New York Attorney General's lawsuit filed against one of those third parties.[10] As such, it is not Bassman's counsel's own work product.[11] It is, in significant part, work product of the lead counsel in the Securities Action. Bassman's adoption of allegations therein conflict with representation of the interests of Freddie Mac – the nominal defendant, but ultimate beneficiary of the recovery in this lawsuit.

The lack of quality of the Bassman Complaint is conceded by the eleventh hour abandonment of that pleading just prior to submission of Sadowsky's opposition to Bassman's motion for consolidation and appointment of lead counsel. Bassman's now acknowledged need to conform his complaint to the allegations of improper conduct alleged in the Sadowsky Complaint and conform his Freddie Mac defendants to those named in the Sadowsky Complaint,

---

[10]State of New York v. First American Corporation, et al., 406796/2007 (N.Y. Sup. Ct. 2007) (Slyne Decl. Exh. W). For examples of substantial copying by Bassman's counsel from the Attorney General's complaint compare the Bassman Complaint (Slyne Decl. Exh. C) ¶¶ 66-70, 74-80 with the Attorney General's complaint ¶¶ 12-15, 18, 19, 25, 26, 29, 34, 37.

[11]Further examples of Bassman's counsel's undertaking no more than a cursory investigation is reflected in both the Bassman Complaint and Amended Complaint, which both allege that WaMu, named as a defendant therein, had assets of $346 billion, just as apparently copied from the Securities Action filed months before the Bassman Complaint. However, prior to the filing of both the Bassman Complaint and the amended complaint, WaMu in public filings reported substantially lower assets. Slyne Decl. Exhs. X, Y. Bassman's counsel's failure to review readily available public filings of the entity from which he seeks recovery is yet a further example of their scant investigation of facts beyond a review of another litigant's pleading.

which are essential to the derivative claim, establish the lack of merit to Bassman's motion for consolidation and appointment of lead counsel. The high quality of the Sadowsky Complaint was effectively conceded by Bassman when his counsel copied substantial portions thereof in Bassman's recently filed amended complaint.

The few tasks undertaken by Bassman's counsel in the instant action are merely the product of his filing his complaint first, which is not a relevant factor in determining the proper lead counsel to control this critically important litigation.[12] Indeed, in drafting their opposition to the motion to transfer or stay their action, Bassman's counsel reached out to Sadowsky's counsel for advice on how best to oppose the motion, requesting and receiving the papers Sadowsky's counsel filed in opposition to a similar motion in the prior Freddie Mac derivative litigation, as well as to successfully oppose the request to transfer the derivative litigation to the Eastern District of Virginia made by Freddie Mac and other defendants before the JPML. Slyne Decl. Exh. Z. Bassman's counsel's reliance upon the work of Sadowsky's counsel to perform tasks undertaken by them further demonstrates why plaintiff Sadowsky's application to serve as lead counsel should be granted.

---

[12] TCW Technology Limited Partnership v. Intermedia Communications, Inc., 2000 Del. Ch. LEXIS 147, at * 3 (Del. Ch. Oct. 17, 2000) ("[N]one of the pending lawsuits in this litigation is entitled to any special status as the lead or coordinating lawsuit simply by virtue of having been filed earlier than any other pending action."). The only possible relevance being first to file could have is in the situation where a competing litigant copied that first filed complaint, which would demonstrate the quality of the first filed complaint. Dollens v. Zionts, 2001 U.S. Dist. LEXIS 19966, at *19 (N.D. Ill. Dec. 4, 2001). The Sadowsky Complaint, however, borrows nothing from the Bassman Complaint. Rather, Bassman's amended complaint copiously borrows from the Sadowsky Complaint.

**PLAINTIFF'S CROSS-MOTION FOR ENTRY OF PROPOSED PRE-TRIAL ORDER**

For all of the reasons stated herein, Sadowsky respectfully moves the Court for appointment of his counsel as lead counsel and for entry of the [Proposed] Pre-Trial Order filed simultaneously herewith.

**CONCLUSION**

For all of the foregoing reasons, Sadowsky respectfully requests that Bassman's Motion to Consolidate Related Cases and for Entry of Proposed Case Management Order be denied in its entirety and that Sadowsky's Cross-Motion for Entry of Proposed Case Management Order be granted in its entirety.

Dated:  August 25, 2008                                   Respectfully submitted,

**WEISS & LURIE**

By: /s/David C. Katz
David C. Katz (DK-6235)
551 Fifth Avenue
New York, New York 10176
Telephone:    (212) 682-3025
Facsimile:    (212) 682-3010

**STULL STULL & BRODY**

By: /s/Patrick Slyne
Patrick Slyne (PS-1765)
6 East 45th Street
New York, New York 10017
Telephone:    (212) 687-7230
Facsimile:    (212) 490-2022

**Plaintiff's Counsel**

13